IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 10, 2015

## STATE OF TENNESSEE v. DARREN ANTONIO SMITH

**Appeal from the Circuit Court for Montgomery County**
**No. 41400486     Michael R. Jones, Judge**

_____

**No. M2014-01969-CCA-R3-CD – Filed October 16, 2015**

_____

Defendant, Darren Antonio Smith, was indicted by the Montgomery County Grand Jury with one count of aggravated burglary, one count of vandalism over $1000, and one count of theft of property under $500.  After a jury trial, Defendant was convicted of the lesser included offense of criminal trespass and was convicted as charged of vandalism and theft.  On appeal, Defendant challenges the sufficiency of the convicting evidence.  Upon our thorough review of the record, we conclude that the evidence is sufficient to support Defendant's convictions and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Roger E. Nell, District Public Defender; and Crystal Myers, Assistant District Public Defender, for the appellant, Darren Antonio Smith.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; John W. Carney, District Attorney General; and Robert Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

This is Defendant's direct appeal from his convictions in the Circuit Court of Montgomery County for criminal trespass, felony vandalism and misdemeanor theft.

On May 5, 2014, Defendant was indicted by the Montgomery County Grand Jury for one count of aggravated burglary, one count of vandalism over $1000, and one count of theft of property under $500. A jury trial was held on August 19, 2014, at which the following facts were adduced:

Felesha Johnson testified that she had been in a relationship with Defendant from June 2011 until August 2013. A few months after they began seeing each other, Ms. Johnson discovered she was pregnant; both Ms. Johnson and Defendant believed the child was his. At the time, Ms. Johnson was renting a house, and Defendant stayed with her several nights each week. Defendant was not on the lease and did not pay rent or utilities. Defendant kept clothes and shoes at Ms. Johnson's residence, as well as a 55-inch, flat-screen television in the living room. There was also a 32-inch, flat-screen television in Ms. Johnson's bedroom, which she testified she had purchased for $275 with her tax refund in February 2011, prior to the beginning of her relationship with Defendant.

Ms. Johnson testified that her relationship with Defendant ended approximately a week and a half before the date of the incident in question. Defendant began to suspect that he was not the father of Ms. Johnson's child. Ms. Johnson testified that Defendant had moved out most of his belongings except for the 55-inch television that would not fit in his car. Ms. Johnson changed the locks to the house after Defendant left.

On August 30, 2013, Ms. Johnson was working at her job as a teacher at a daycare center. Defendant arrived around 11 a.m. to confront Ms. Johnson about the results of a DNA test that confirmed he was not the biological father of her child. Defendant asked Ms. Johnson why his key no longer worked. She explained that she had changed the locks. Defendant told her that he needed to get the rest of his belongings, including the 55-inch television. Ms. Johnson would not give Defendant her key but told him that she would meet him at the house after she got off of work. Defendant said he would get in by himself and left.

When Ms. Johnson returned to her home that evening, she found the front door damaged. Frightened, she called 911. Once the police arrived, Ms. Johnson entered the front living room and discovered a pile of her clothes on the floor covered in bleach. The living room carpet was also damaged by the bleach. Defendant's 55-inch television was missing from the living room, in addition to the 32-inch television from Ms. Johnson's bedroom. Photographs of both the damaged door and the discolored carpet were entered into evidence.

As a result of this incident, Ms. Johnson moved out of the home and into a different rental property. A representative of the rental company testified that the cost of

replacing the carpet was $631.02 and the cost to repair the front door was $305. Ms. Johnson was paying the rental company $50 per month to cover the cost of these damages.

Detective Ronald Parrish of the Clarksville Police Department investigated the incident and took photographs of the damaged door and carpet. He testified that the damage to the front door indicated forced entry. On September 9, 2013, Detective Parrish spoke with Defendant. Defendant said that he was angry with Ms. Johnson and admitted that he had poured bleach on her clothing. Defendant denied prying open the door and told Detective Parrish that he had entered the house with his key.

Defendant testified on his own behalf. He claimed that Ms. Johnson's house had been his residence for two years and that he stayed there every night. He denied that he had moved out of the home ten days prior to the incident and insisted that he had slept there the night before. Defendant explained that after he confronted Ms. Johnson at her job, he used his key to enter the house and retrieve his belongings. He denied that he caused the damage to the front door. He admitted that he poured bleach on Ms. Johnson's clothes. He explained that he had spent hundreds of dollars on clothes for Ms. Johnson and that he did not want her to have them after their relationship ended. Defendant accepted responsibility for the bleach-damaged carpet. He also admitted that he took the 32-inch television from Ms. Johnson's bedroom. Defendant claimed that he had given Ms. Johnson the money to buy that television so that she could spend her tax refund money on her children.

The jury found Defendant guilty of the lesser included offense of criminal trespass and guilty as charged of vandalism over $1000 and theft of property valued under $500. At a separate sentencing hearing, the trial court sentenced Defendant to concurrent sentences of 30 days for the criminal trespass, 11 months and 29 days for the theft, and 4 years for the vandalism. The trial court ordered split confinement, with the Defendant to serve one year in incarceration and the rest to be served on supervised probation. Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant challenges the sufficiency of the evidence supporting his three convictions. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a

verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

A criminal offense may be established entirely by circumstantial evidence. *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010). "Circumstantial evidence is intrinsically no different from testimonial evidence." *Dorantes*, 331 S.W.3d at 380 (quoting *Holland v. United States*, 348 U.S. 121, 139-40 (1954)). It is for the jury to determine the weight to be given the circumstantial evidence, the inferences to be drawn from the evidence, and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. *State v. James*, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. *See Dorantes*, 331 S.W.3d at 380-81 (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

Furthermore, questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). This is because the jury has "the benefit of hearing witness testimony and observing witness demeanor." *State v. Robinson*, 400 S.W.3d 529, 533 (Tenn. 2013). As the Tennessee Supreme Court explained almost half a century ago:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). Therefore, "'[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the

evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id*.; *Dorantes*, 331 S.W.3d at 379.

### A. *Criminal Trespass*

Defendant was convicted of criminal trespass as a lesser included offense of aggravated burglary. Under Tennessee Code Annotated section 39-14-405(a), "[a] person commits criminal trespass if the person enters or remains on property, or any portion of property, without the consent of the owner." It is a defense to criminal trespass if the person reasonably believed that the owner's consent to enter the property had been granted, if the person's conduct did not substantially interfere with the owner's use of the property, and if the person left immediately upon request. *Id*. at (b). Criminal trespass is a Class C misdemeanor. *Id*. at (g).

Defendant argues that he reasonably believed that he was entering property for which the owner's consent had been granted. However, in the light most favorable to the State, the evidence shows that Defendant did not have Ms. Johnson's consent to enter her rental house. Defendant was not on the lease, and he only stayed at the house a few nights each week. Even though Ms. Johnson gave Defendant a key to the house during their relationship, Ms. Johnson testified that she changed the locks when the relationship ended, ten days prior to the incident in question. Defendant knew that his key no longer worked because he confronted Ms. Johnson about it at her job. She did not give him a new key but told Defendant that she would meet him at the house when she got off work. Therefore, Defendant knew he did not have Ms. Johnson's consent to enter the home before that time. Defendant admitted entering the house after this confrontation. A photograph was entered into evidence showing damage to the front door that indicated forced entry. Though the evidence that Defendant caused the damage to the front door was circumstantial, it is within the province of the jury to determine the weight of such evidence and the inferences to be drawn from it. *See James*, 315 S.W.3d at 456. By its verdict, the jury clearly discredited Defendant's testimony that he entered the house with his key. Defendant is not entitled to relief on this conviction.

### B. *Vandalism*

Defendant was convicted as charged of vandalism over $1000. A person commits the offense of vandalism who knowingly "[c]auses damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent." T.C.A. § 39-14-408(b). Vandalism of property valued at $1000 or more but less than $10,000 is a Class D felony. T.C.A. § 39-14-408(c) (stating acts of vandalism are to be punished as theft under T.C.A. § 39-14-105).

Defendant argues that he did not knowingly cause damage to the carpet. Under Tennessee Code Annotated section 39-11-302(b):

> [A] person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Defendant admitted that he piled Ms. Johnson's clothing on the living room floor and poured bleach on them with the intention of "messing them up" so that Ms. Johnson could no longer use them. From this, it was reasonable for the jury to infer that Defendant knew that pouring bleach on textiles would cause damage. Therefore, it was also reasonable for the jury to infer that Defendant was aware that his conduct of pouring bleach onto the clothes was reasonably certain to also cause damage to the surrounding carpet. That Defendant did not intend to cause damage to the carpet is irrelevant, as the vandalism statute requires only that he acted knowingly. *See* T.C.A. § 39-14-408(b). Additionally, during his testimony, Defendant accepted responsibility for damaging the carpet.

Defendant also argues that the State did not establish that the value of the property damaged was in excess of $1000. The value of damaged property is determined by either the fair market value of the property at the time and place of the offense or, if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense. T.C.A. § 39-11-106(a)(36)(A). Various panels of this Court have also held that the value of the cost of repairs is an appropriate means of determining the value of the damage sustained to the vandalized property. *See State v. John Lindsey, III*, No. E2011-00052-CCA-R3-CD, 2012 WL 5392156, at *5 (Tenn. Crim. App. Nov. 5, 2012), *perm. app. denied* (Tenn. Mar. 21, 2013).

In this case, a representative from the rental company testified that the cost of replacing the bleach-damaged carpet was $631.02 and that the cost of repairing the front door of the house was $305.[1] As discussed above, though Defendant disputes that he caused the damage to the front door, the jury could rationally infer that he did from the

---

[1] We note that, while the indictment for the vandalism charge specifies damage only to the clothing and carpet, such a specification of the exact property damaged is surplusage. *See State v. Glen Sewell*, No. W2014-00984-CCA-R3-CD, 2015 WL 1932287, at *7 (Tenn. Crim. App. Apr. 29, 2015) (citing *State v. March*, 293 S.W.3d 576, 589-90 (Tenn. Crim. App. 2008)) (noting that the identification of the specific property damaged is not an essential element of the offense of vandalism), *perm. app. denied* (Tenn. Aug. 14, 2015). Therefore, inclusion of the cost of repairing the front door damaged by Defendant is proper in determining the total value of the vandalized property. *Id*. (holding that "the evidence of the additional damages was relevant and therefore admissible").

circumstantial evidence. Defendant admitted that he poured bleach on Ms. Johnson's clothes, on which he testified that he spent up to $1000. Even if the value of clothing depreciates after purchase, the cost of replacing the bleach-damaged clothes, when added to the other damages, would certainly bring the total value of the damage caused by Defendant over the $1000 threshold. Additionally, even though Defendant purchased the clothing, he did so as a gift to Ms. Johnson, making her the owner of that property. *See* T.C.A. § 39-11-106(a)(26) (defining "owner" as "any person, other than the defendant, who has possession of or any interest in the property, except for a mortgage, deed of trust, or security interest"). The proof is sufficient that Defendant knowingly caused damage to the property of another and that the value to repair or replace that property was over $1000. Defendant is not entitled to relief on this conviction.

### C. *Theft of Property*

Finally, Defendant argues that he cannot be convicted of theft of property because he was the rightful owner of the 32-inch television he took from Ms. Johnson's bedroom. Theft of property is defined as when a person "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). Theft of property valued $500 or less is a Class A misdemeanor. T.C.A. § 39-14-105(a).

As noted above, an "owner" is defined as "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property." T.C.A. § 39-11-106(a)(26). A person can be an "owner" even though their possession of the property in question is unlawful. *Id.* This Court "has interpreted the definition of 'owner' within the meaning of the theft statute to extend to a variety of interests 'broader than its commonly understood meaning.'" *State v. Darren Eugene Fleshman*, No. E2013-00557-CCA-R3-CD, 2014 WL 2804183, at *5 (Tenn. Crim. App. June 18, 2014) (quoting *State v. Joel Christian Parker*, No. M2001-00773-CCA-R3-CD, 2002 WL 31852850, at *2 (Tenn. Crim. App. Dec.18, 2002), *perm. app. denied* (Tenn. May 5, 2003)), *perm. app. denied* (Tenn. Nov. 21, 2014). "[A]n owner's possession of the property may be actual or constructive," *March*, 293 S.W.3d at 592 (internal quotation omitted), and "[e]vidence of possession is ordinarily sufficient proof of ownership." *State v. Carlos Weeks*, No. W2004-02235-CCA-R3-CD, 2005 WL 1566490, at *3 (Tenn. Crim. App. June 23, 2005), *perm. app. dismissed* (Tenn. Sept. 9, 2005).

Ms. Johnson clearly had possession of the television, as it was in her bedroom. Even though she knew Defendant needed to retrieve his 55-inch television from the living room, Ms. Johnson did not give Defendant consent to take the 32-inch television from her bedroom. Additionally, Ms. Johnson testified that she purchased the television with money she received from her tax refund in February 2011, several months before entering a relationship with Defendant. Even though Ms. Johnson did not have a receipt,

the State was not required to prove that the victim had legal title to the property in question. *State v. Corey Gilliam*, W2007-02401-CCA-R3-CD, 2009 WL 3015122, at *3 (Tenn. Crim. App. Sept. 22, 2009) (citing *March*, 293 S.W.3d at 591-92), *no perm. app. filed*. The jury was free to accredit Ms. Johnson's testimony over Defendant's testimony that the television was his because he gave Ms. Johnson the money to buy it. Even if Defendant's version were true, the jury could rationally conclude that the television was a gift, in which case Ms. Johnson would still be the rightful owner. Defendant is not entitled to relief on this conviction.

*Conclusion*

Based on the foregoing, we hold that there is sufficient evidence to support Defendant's convictions for criminal trespass, vandalism over $1000, and theft of property under $500. Therefore, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE